1    JOAN B. TUCKER FIFE (SBN: 144572)
     jfife@winston.com
2    WINSTON & STRAWN LLP
     101 California Street
3    San Francisco, CA 94111-5802
     Telephone:  (415) 591-1000
4    Facsimile:   (415) 591-1400

5    EMILIE C. WOODHEAD (SBN: 240464)
     ewoodhead@winston.com
6    AUDREY SHEN CHUI (SBN: 254510)
     achui@winston.com
7    WINSTON & STRAWN LLP
     333 S. Grand Avenue, 38th Floor
8    Los Angeles, CA 90071-1543
     Telephone:  (213) 615-1700
9    Facsimile:   (213) 615-1750

10   Attorneys for Defendant
     U.S. BANCORP

11

12

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

13           **UNITED STATES DISTRICT COURT**

14          **SOUTHERN DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16  ELIZABETH BARKER, and YADIRA ESQUEDA, individually and on behalf of all others similarly situated, | **Case No. 3:15-cv-01641-CAB-WVG** |
| 17 | **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER FEDERAL RULES OF CIVIL PROCEDURE, RULE 23** |
| 18                Plaintiff, | |
| 19        v. | |
| 20  U.S. BANCORP, a corporation; | Judge:   Hon. Cathy Ann Bencivengo |
| 21                Defendant. | Special Briefing Schedule Ordered by the Honorable William V. Gallo (Dkt. 53) |

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. BACKGROUND .............................................................................................. 2

    A.    U.S. Bank branch managers have wide management discretion. ..............2

    B.    *Spainhower v. U.S. Bank* denied certification of a class of in-store branch managers based on identical claims of misclassification. ..............3

    C.    Plaintiffs' depositions ..................................................................................4

    D.    The Court granted conditional certification of an FLSA class, but was inclined to agree with *Spainhower* on a Rule 23 class certification motion. ......................................................................................5

    E.    Depositions of individuals who submitted consent forms ........................5

    F.    Plaintiffs mischaracterize the branch manager job description and concede that only *some* branch managers spent more than half their time on "banker duties" in only *some* workweeks. ...................................6

    G.    Plaintiffs propose a vague and unsupported "trial plan" that does not allow U.S. Bank to assert individual defenses and cross-examine class members. ...............................................................................8

    H.    Other putative class members ....................................................................8

III. A CLASS CANNOT BE CERTIFIED .........................................................9

    A.    Plaintiffs bear the burden of proof. ..........................................................9

    B.    Plaintiffs have failed to establish there is an ascertainable class. ..............9

        1.    There is no objective, reliable way to determine class membership. ................................................................................10

        2.    It is not administratively feasible to determine the class. ..............11

        3.    The fact that Plaintiffs cannot identify the class to notify demonstrates that class certification is not appropriate. ................12

    C.    Plaintiffs cannot establish numerosity as to a speculative class. ..............13

    D.    Resolving the claim of misclassification requires individualized inquiries that cannot be answered on a classwide basis – and therefore common issues do not exist, let alone predominate. ...............14

        1.    Rule 23(a)(2) commonality and Rule 23(b)(3) predominance ......14

        2.    Plaintiffs have not identified a common policy relevant to exemption. ..............................................................................15

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

i

3.    Individualized determinations must be made as to what duties branch managers performed and whether they are exempt. ...................................................................16

4.    Determining the amount of time branch managers spent on a mix of duties is inherently individualized. .....................................19

5.    Individualized issues are required to determine whether branch managers met U.S. Bank's expectations and whether those expectations were realistic. ..................................................20

6.    Plaintiffs' form declarations have limited evidentiary value. .......21

E.    A class action is not superior because a trial on the merits and class identification require adjudicating individualized issues.........................22

F.    Plaintiffs cannot establish typicality. ..........................................23

G.    Plaintiffs' "trial plan" does not provide an independent basis for class certification, does not describe any reliable means for determining liability on a classwide basis, and violates U.S. Bank's due process rights. ...................................................................23

1.    Plaintiffs cannot manufacture the Rule 23 requirements by proposing a "trial plan." ...................................................23

2.    Plaintiffs provide no evidence that their "trial plan" is reliable. ...................................................................24

3.    Plaintiffs' "trial plan" violates U.S. Bank's due process rights by depriving it of the opportunity to cross-examine branch managers. .........................................................24

4.    Plaintiffs' proposed survey is unreliable because of self-interest bias. .........................................................25

IV. CONCLUSION .............................................................25

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

# Table of Authorities

**Page(s)**

**Cases**

*Aburto v. Verizon Cal. Inc.*,
   2012 WL 10381 (C.D. Cal. Jan. 3, 2012) ................................................................. 20

*Alba v. Papa John's USA, Inc.*,
   2007 WL 953849 (C.D. Cal. Feb. 7, 2007) ............................................................. 18

*Ayala v. Antelope Valley Newspapers, Inc.*,
   59 Cal. 4th 522 (2014) ................................................................................... 18, 19

*Batze v. Safeway, Inc.*,
   --- Cal. Rptr. 3d. ---, 2017 WL 1231382 (Cal. App. Apr. 4, 2017) .................. 17, 21

*Bell v. Farmers Ins. Exch.*,
   115 Cal. App. 4th 715 (2004) ................................................................................. 19

*Bowerman v. Field Asset Servs., Inc.*,
   2015 WL 1321883 (N.D. Cal. Mar. 24, 2015) ........................................................ 24

*Bruton v. Gerber Prod. Co.*,
   2014 WL 2860995 (N.D. Cal. June 23, 2014) ......................................... 10, 12, 13

*Carrera v. Bayer Corp.*,
   727 F.3d 300 (3d Cir. 2013) ................................................................................. 11

*In re Clorox Consumer Litig.*,
   301 F.R.D. 436 (N.D. Cal. 2014) ......................................................... 10, 11, 23

*Cruz v. Dollar Tree Stores, Inc.*,
   2011 WL 2682967 (N.D. Cal. July 8, 2011) ........................................................... 20

*Daniel F. v. Blue Shield of Cal.*,
   305 F.R.D. 115 (N.D. Cal. 2014) ................................................................... 10, 11

*Duran v. U.S. Bank Nat. Assn.*,
   59 Cal. 4th 1 (2014) ...................................................................................... 24, 25

*E.E.O.C. v. Kovacevich "5" Farms*,
   2007 WL 1174444 (E.D. Cal. Apr. 19, 2007) ........................................................ 13

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ........................................................................ 23

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ............................................................................. 14

*Friend v. Hertz Corp.*,
   2011 WL 750741 (N.D. Cal. Feb. 24, 2011) ...................................................... 20

*Gibson v. Cty. of Riverside*,
   181 F. Supp. 2d 1057 (C.D. Cal. 2002) ......................................................... 24, 25

*Guzman v. Bridgepoint Educ., Inc.*,
   305 F.R.D. 594 (S.D. Cal. 2015) ........................................................... 10, 11, 14

*Heffelfinger v. Elec. Data Sys. Corp.*,
   2008 WL 8128621 (C.D. Cal. Jan. 7, 2008) *aff'd and remanded*, 492
   F. App'x 710 (9th Cir. 2012) .............................................................................. 12

*In re Hulu Privacy Litigation*,
   2014 WL 2758598 (N.D. Cal. June 17, 2014) .................................................... 11

*Hurt v. Shelby Cty. Bd. of Educ.*,
   2014 WL 4269113 (N.D. Ala. Aug. 21, 2014) .................................................... 13

*Huynh v. Harasz*,
   2015 WL 7015567 (N.D. Cal. Nov. 12, 2015) .................................................... 12

*Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014) ............................................................................ 23

*Jimenez v. Domino's Pizza, Inc.*,
   238 F.R.D. 241 (C.D. Cal. 2006) .................................................................. 20, 24

*Johnson v. Big Lots Stores, Inc.*,
   561 F. Supp. 2d 567 (E.D. La. 2008) ................................................................. 25

*Jones v. ConAgra Foods, Inc.*,
   2014 WL 2702726 (N.D. Cal. June 13, 2014) .................................................... 10

*Kilbourne v. Coca-Cola Co.*,
   2015 WL 5117080 (S.D. Cal. July 29, 2015) ....................................................... 9

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Krueger v. Wyeth, Inc.*,
310 F.R.D. 468 (S.D. Cal. 2015) ........................................................... 12

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas
Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ................................................................ 19

*Marcus v. BMW of North America, LLC*,
687 F.3d 583 (3d Cir. 2012) ................................................................... 11

*Marlo v. United Parcel Serv., Inc.*,
251 F.R.D. 476 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011).................. 14

*Martin v. Pac. Parking Sys. Inc.*,
583 F. App'x 803 (9th Cir. 2014).......................................................... 10

*Martinez v. Joe's Crab Shack Holdings*,
231 Cal. App. 4th 362 (2014), *as modified on denial of reh'g* (Dec. 3,
2014) .............................................................................................. 18

*Mauro v. Gen. Motors Corp.*,
2008 WL 2775004 (E.D. Cal. July 15, 2008)........................................ 12

*Mendoza v. Home Depot, U.S.A. Inc.*,
2010 WL 424679 (C.D. Cal. Jan. 21, 2010)........................................ 23

*Mike v. Safeco Ins. Co.*,
223 F.R.D. 50 (D. Conn. 2004) ................................................... 11, 13, 23

*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
311 F.R.D. 590 (C.D. Cal. 2015).......................................................... 24

*Morse v. Marie Callender Pie Shops, Inc.*,
2011 WL 13115429 (S.D. Cal. May 12, 2011) ............................... 18, 20

*Patel v. Nike Retail Servs., Inc.*,
2016 WL 1241777 (N.D. Cal. Mar. 29, 2016) ................................. 17, 20

*Pedroza v. Petsmart, Inc.*,
2013 WL 1490667 (C.D. Cal. Jan. 28, 2013)............................. 15, 19, 22

*Perry-Roman v. AIG Retirement Svcs., Inc.*,
2010 WL 8697061 (C.D. Cal. Feb. 24, 2010) ..................................... 18

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Peterson v. Albert M. Bender Co.*,
  75 F.R.D. 661 (N.D. Cal. 1977) ............................................................................ 13

*Ramirez v. Yosemite Water*,
  20 Cal.4th 785 (1999) ..................................................................................... 20, 21

*Rea v. Michaels Stores, Inc.*,
  2014 WL 1921754 (C.D. Cal. May 8, 2014) .......................................................... 20

*Red v. Kraft Foods, Inc.*,
  2012 WL 8019257 (C.D. Cal. April 12, 2012) ....................................................... 11

*Rix v. Lockheed Martin Corp.*,
  2011 WL 890744 (S.D. Cal. Mar. 14, 2011) .......................................................... 20

*Rosenberg v. Renal Advantage, Inc.*,
  2013 WL 3205426 (S.D. Cal. June 24, 2013), *aff'd*, 649 F. App'x 580
  (9th Cir. 2016) ................................................................................................. 16, 23

*Sanchez v. Wal Mart Stores, Inc.*,
  2009 WL 1514435 (E.D. Cal. May 28, 2009) ........................................................ 23

*Sav-On Drug Stores, Inc. v. Sup. Ct.*,
  34 Cal. 4th 319 (2004) ........................................................................ 17, 18, 23, 24

*Sepulveda v. Wal-Mart Stores, Inc.*,
  237 F.R.D. 229 (C.D. Cal. 2006), *aff'd in part*, *rev'd in part*, 275 F.
  App'x 672 (9th Cir. 2008), *opinion vacated on reh'g*, 464 F. App'x
  636 (9th Cir. 2011) ........................................................................... 17, 20, 21, 22

*Sinohui v. CEC Entm't, Inc.*,
  2016 WL 3475321 (C.D. Cal. Mar. 16, 2016) ................................................. 16, 24

*Spainhower v. U.S. Bank N.A.*,
  2010 WL 1408105 (C.D. Cal. Mar. 25, 2010) .............................................. *passim*

*Spencer v. Beavex, Inc.*,
  2006 WL 6500597 (S.D. Cal. Dec. 15, 2006) ................................................. 11, 12

*Stone v. Advance Am.*,
  278 F.R.D. 562 (S.D. Cal. 2011) ..................................................................... 11, 19

*Velazquez v. Costco Wholesale Corp.*,
  2011 WL 4891027 (C.D. Cal. Oct. 11, 2011) ................................................. 19, 20

**Winston & Strawn LLP**
333 S. Grand Avenue
Los Angeles, CA 90071-1543

*Vinole v. Countrywide Home Loan, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ............................................................. 5, 9, 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................ 14

*Wallace v. Countrywide Home Loans, Inc.*,
   2012 WL 11896333 (C.D. Cal. Aug. 31, 2012) ........................................ 25

*Walsh v. IKON Office Solutions, Inc.*,
   148 Cal. App. 4th 1440 (2007) ................................................................. 20

*Weigele v. FedEx Ground Package Sys., Inc.*,
   267 F.R.D. 614 (S.D. Cal. 2010) ........................................... 16, 18, 19, 23

*In re Wells Fargo Home Mortg. Overtime Pay Litig.*,
   571 F.3d 953 (9th Cir. 2009) ................................................................ 5, 19

*Weigele v. Fedex Ground Package Sys., Inc.*,
   2008 WL 410691 (S.D. Cal. Feb. 12, 2008) ............................................. 19

*In re Wells Fargo II*,
   268 F.R.D. 604 (N.D. Cal. 2010) ....................................................... 20, 25

*Williams v. Lockheed Martin Corp.*,
   2011 WL 2200631 (S.D. Cal. June 2, 2011) ..................................... 16, 20

*Xavier v. Philip Morris USA Inc.*,
   787 F. Supp. 2d 1075 (N.D. Cal. 2011) .............................. 9, 10, 11, 12

*Zackaria v. Wal-Mart Stores, Inc.*,
   2015 WL 2412103 (C.D. Cal. May 18, 2015) ........................................... 20

**Statutes**

FLSA .................................................................................................... 1, 5

**Other Authorities**

"Essential Functions" nos. 4 and 5. (Ex. 46.) ............................................ 7

IWC Wage Order No. 4-2001 § 1(A)(1)(e) ............................................... 20

Rule 12(b)(6) .............................................................................................. 12

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER FEDERAL
RULES OF CIVIL PROCEDURE, RULE 23                                    (15cv1641)

Rule 23 ................................................................................................................*passim*

Rule 23(a) .......................................................................................................... 13, 23

Rule 23(a)(2) ............................................................................................................ 14

Rule 23(b)(3) ............................................................................................... 10, 14, 22

Rule 23(c)(2) ............................................................................................................ 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Winston & Strawn LLP**
**333 S. Grand Avenue**
**Los Angeles, CA 90071-1543**

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION UNDER FEDERAL
RULES OF CIVIL PROCEDURE, RULE 23                                                    (15cv1641)

# I. INTRODUCTION

In 2007, Jason Spainhower filed a putative class action alleging that U.S. Bank in-store branch managers were misclassified as exempt from overtime. After nearly three years of discovery and plaintiff's submission of 28 putative class member declarations, Judge Nguyen denied class certification, stating:

> In wage and hour disputes where a defendant claims exemptions . . . individualized inquiries about the ***actual*** hours worked, percentage of exempt versus non-exempt work performed, particular job experiences, and other inquiries are critical.

*Spainhower v. U.S. Bank N.A.*, 2010 WL 1408105, *4 (C.D. Cal. Mar. 25, 2010).

In 2015, Plaintiffs asserted the same claims. While the court granted conditional certification of an FLSA action, it cautioned at oral argument:

> If this was a Rule 23 class certification motion, I would be inclined to agree with the *Spainhower* case. And I think, ultimately, it may be the undoing of the plaintiff here to be able to show that this is not an individualized inquiry in each branch as to each manager, because the crux of this case is whether or not more than 50 percent of their day is spent doing non-managerial tasks…. (Ex. 2, Sep. 1, 2016 Hr'g Tr., 7:25-8:6.)

Even though one of the two Plaintiffs admitted that her primary duty was to "oversee the branch," Plaintiffs persisted. They obtained the entire California class list. They insisted on individualized records for a random sample of 58 California putative class members. They obtained U.S. Bank's operating procedures manual that they suggested would demonstrate common proof.

Yet they present no evidence that a class of all branch managers can be certified, instead asking to certify a "narrowed" class that would be determined by surveying branch managers regarding the amount of time spent on a vague and amorphous set of "banker duties." Plaintiffs' only evidentiary support is: 27 putative class member declarations (only one of whom was in the random sample); new declarations from Plaintiffs directly contradicting sworn testimony; a job description stating that branch managers are expected to spend the majority of their time on management; and the deposition testimony of branch managers who admitted they met that expectation. None of this is common proof of misclassification.

1

By suggesting a survey to "confirm" time spent on duties, Plaintiffs concede the exact issue Judge Nguyen identified in *Spainhower*: individualized inquiries about actual work performed are ***critical***. Because liability hinges on these inquiries, the Court cannot ignore them in favor of other common issues.

Moreover, Plaintiffs have failed to establish a single common issue. The question of whether individuals perform "manager duties" or "banker duties" presents a false dichotomy. Identical duties tasks may be exempt or non-exempt based on the purpose they serve. Determining whether a duty is exempt therefore requires individual, fact-specific inquiries about the reasons that branch managers performed a certain duty at a certain time. Individualized issues predominate.

Plaintiffs ask the Court to circumvent these individual issues by performing a survey to determine liability, and then moving straight to assessing damages. This denies U.S. Bank the opportunity to cross-examine those surveyed–just as Plaintiffs denied U.S. Bank the opportunity to cross-examine their declarants by withholding declarations signed before the close of discovery.

A mere proposal for a survey is not a substitute for the common proof to support class certification. Plaintiffs have failed to meet their burden of proving that the Rule 23 requirements are met, and class certification should be denied.

## II.  BACKGROUND

### A.    U.S. Bank branch managers have wide management discretion.

U.S. Bank operates full-service bank branches inside grocery stores. It is incredibly important to have a branch ***manager*** in charge, including because each branch is a financial cost center responsible for ***millions of dollars*** in assets. (Dkt. 58, PageID 1744, Brown Dec. ¶4.) U.S. Bank gives its branch managers discretion to run the branch like their own small business.[1] Branch managers exercise that discretion in

---

[1] Brown Dec. ¶¶4-5; Aguilar Dep. 102:15-103:17, 176:10-177:5, 244:11-246:1, 247:5-248:12; Dancoe Dep. 120:10-18, 123:8-19, 194:13-14, 196:19-25, 126:8-20; Herrera Dep. 59:21-60:11, 174:9-175:2; Foley Dec. ¶7; Gray Dec. ¶8; Imkamp Dec. ¶12; Mia Dec. ¶13; Tandjung Dec. ¶24.

various ways, *e.g.*: setting goals for their bankers, directing the focus of the branch to meet goals, and determining priorities.[2] Reflecting the responsibility for the branch as a whole, branch manager incentive pay is based on the performance of the entire branch (unlike bankers, whose incentives are based on individual sales goals).[3]

**B.** ***Spainhower v. U.S. Bank* denied certification of a class of in-store branch managers based on identical claims of misclassification.**

*Spainhower v. U.S. Bank* denied Rule 23 certification of a class of in-store branch managers in a misclassification action. Spainhower filed 28 branch manager declarations, claiming – like Plaintiffs' declarants – that they spent the majority of their time assisting customers in the same manner as non-exempt branch employees. (*See* Case No. 2:08-cv-00137-JHN-PJW, Dkt. 83-4, 83-5.) Judge Nguyen found:

> With substantial discretion as to how to operate one's branch comes the likelihood of substantial differences in how each member of the proposed class spent his or her workday. These likely variances weigh against the notion that common proof would establish how each employee actually spent his or her time or what percentage of each employee's work was spent in exempt versus non-exempt activities.

*Spainhower*, 2010 WL 1408105, *4. Because branch managers have discretion

_____

[2] *See* Aguilar Dep. 245:18-248:14 (her number one priority is building and managing her team, and she believes some branch managers wrongly focus on customer service too much), 250:7-254:11 (other branch managers do things differently, and she decides which of various resources to use to manage her branch), 35:11-36:3 (she personalizes employee goals based on experience), 36:17-37:7, 69:12-70:2, 142:20-144:4, 144:15-147; Bullock Dep. 137:15-138:11, 145:14-148:4 (discretion to meet goals and prioritize branch's focus), 227:16-229:5 (discretion to set some types of branch-level goals), 234:6-15, 235:14-236:18, 236:24-237:14, 242:14-243:19; Herrera Dep. 53:3-54:7, 54:18-14, 56:7-21, 151:1-25, 151:17-25, 153:21-155:5; Kelly Dep. 105:9-106:15, 71:7-21 (discretion to set KDS [customer service] goals for branch higher than regional requirements); Porter Dep. 145:11-146:17 (assigns and tailors goals for staff based on experience), 147:9-148:16 (decides how to achieve branch goals, and there are different ways to do it; he focuses on staff development); Hale Dec. ¶7 (branch managers are expected to exercise discretion); Umbenhaur Dec. ¶7 ("make[s] on-the-spot decisions as to what we as a branch would focus on that day"); Burgin Dec. ¶13; Foley Dec. ¶8; Imkamp Dec. ¶11; Ruemenapp Dec. ¶12; Tandjung Dec. ¶14; Williams Dec. ¶8; Ocampo Dec. ¶13; Sims Dec. ¶10.
[3] *See, e.g.*, Aguilar Dep. 35:11-18, 36:4-16, 72:19-73:11, 225:19-23, 28:7-19; Bullock Dep. 237:15-238:17; Dancoe Dep. 96:16-22, 116:10-17, 168:4-17. Branch managers are therefore incentivized to have their bankers make the sales, and to manage the sales process by training, coaching, and monitoring them–rather than taking bankers' sales. (*See* Butarbutar Dec. ¶9 [role is "to be sitting on the sidelines as a coach and observing and training my bankers to be comfortable and effective in making sales" and "not to be working directly with customers" himself]; Tandjung Dec. ¶14.)

1  (specifically as to their daily work routine, how to run the branch, and how to meet

2  sales goals), individual issues predominated the critical question of how they spend

3  their time performing work duties. *Id.*

4  **C.    Plaintiffs' depositions**

5       Plaintiffs' admissions at deposition regarding their discretion (specifically as to

6  their daily work routine, how to run the branch, and how to meet sales goals) mirror

7  the evidence that made class certification inappropriate in *Spainhower*.[4] Barker also

8  repeatedly admitted that she was "constantly" performing exempt duties like

9  managing, coaching and supervising employees. (Barker Dep. 276:10-13, 236:5-8.)

10  Plaintiffs also acknowledged that each branch has unique challenges and differences

11  that can impact the branch manager's job duties.[5]

12       Plaintiffs' deposition testimony contradicts their declarations.[6] For example,

13  Barker testified:

14  [4] Barker was "responsible for everything" in the branch. (Barker Dep. 234:14-17.) She
15  also had to decide how to meet her branch goals based on the team, and exercised
   discretion to motivate her bankers. (*Id.* at 172:2-173:3; 228:9-8.) No guideline told her
16  when things needed to get done during the day, and she could structure her days in the
   manner she chose. (*Id.* at 200:23-201:1.) Esqueda scheduled her own daily activities,
17  could modify her schedule, and had the discretion to determine how to best meet
   branch goals. (Esqueda Dep. 184:2-23, 186:18-187:15.)
   [5] Esqueda Dep. 137:23-138:1 (transaction volume variations), 138:6-16 (staff level
18  variations and how quickly managers can fill open positions), 139:1-18 (some
   managers run multiple branches and may have added district responsibilities), 26:1-
19  18, 30:3-9, 97:16-19 (business level variations due to branch location); Barker Dep.
   55:8-11 and Esqueda Dep. 138:17-22 (availability of co- and assistant managers);
20  *compare* Barker Dep. 199:1-6 *with* Esqueda Dep. 295:19-296:12 (varying perceptions
   of primary duty).
21  [6] *Compare* Barker/Esqueda Dec. ¶¶ 5-6, 8 *with* Barker Dep. 219:16-220:15, 242:8-19,
   244:13-19, 273:22-274:19, 276:10-13 and Esqueda Dep. 153:4-11, 225:14-21, 288:14-
22  22, 194:4-6, 224:6-11, 225:3-6, 229:19-230:13, 231:15-18, 307:9-22 (conflicting
   testimony as to time spent managing and multitasking); *compare* Barker/Esqueda Dec.
23  ¶8 *with* Barker Dep. 57:12-22, 60:20-61:16, 62:17-63:20, 68:15-21, 76:15-19, 103:4-
   14, 183:19-24, 200:23-201:20, 202:2-4 and Esqueda Dep. 184:11-185:1, 198:16-18,
24  199:5-7, 272:22-273:8 (conflicting testimony as to exercise of independent judgment
   and discretion); *compare* Barker/Esqueda Dec. ¶11 *with* Barker Dep. 200:23-201:1
25  and Esqueda Dep. 188:23-189:7, 226:7-18 (conflicting testimony as to existence of
   guidelines and directions on how to perform job); *compare* Barker/Esqueda Dec. ¶¶ 5,
26  7 *with* Barker Dep. 193:11-24, 236:5-8 and Esqueda Dep. 159:18-160:2, 163:25-
   164:2, 164:14-23, 165:25-166:2, 192:4-6, 226:11-24, 287:11-18, 288:23-289:2
27  (conflicting testimony as to time spent on teller transactions); *compare*
   Barker/Esqueda Dec. ¶10 *with* Barker Dep. 263:2-15, 264:15-20, 261:20-262:3
28  (conflicting testimony as to time spent on various tasks).

4

Q:     What do you think was your primary duty as branch manager?

A:     Well, my duties as manager is to oversee the branch. I mean, the daily operations of the branch to make sure clients are serviced, transactions are followed . . . and that we're following policy, procedure, so I am responsible for that branch, good or bad. (Barker Dep. 199:1-10.)

Yet Barker's subsequent declaration claims her "primary and most important duty was to provide customer service" and her "secondary duty" was to manage the branch.

**D.     The Court granted conditional certification of an FLSA class, but was inclined to agree with *Spainhower* on a Rule 23 class certification motion.**

The Court granted conditional certification of a class under the "lenient" first-stage FLSA standard, finding that the burden "is met upon a showing that Plaintiffs were subject to the same uniform classification of exempt status under FLSA." (Dkt. 39.) This is not a sufficient showing for Rule 23 certification. *Vinole v. Countrywide Home Loan, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009); *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 956 (9th Cir. 2009). At hearing, the Court noted that it would be inclined to agree with *Spainhower* that Rule 23 class certification was not appropriate because of the individualized inquiries needed to determine whether 50% of branch managers' time is spent on managerial work. (Ex. 2, 7:25-8:6.)

**E.     Depositions of individuals who submitted consent forms**

After conditional certification, notice went to all putative class members, who could submit consent forms to a third party administrator. U.S. Bank deposed seven individuals who submitted forms, and Plaintiffs' counsel essentially blocked two others. (Chui Dec. ¶2.)

Aguilar testified that she used discretion and independent judgment in exercising her managerial duties every single day. (Aguilar Dep. 138:25-139:4, 279:1-291:2.) Although her branch was occasionally short-staffed and she sometimes filled-in on the teller line, this had no effect on her ability to run a successful branch while spending at least 50% of her time each week on management duties. (*Id.* at 291:3-292:21, 293:8-11.) "Run it like you own it" is how Aguilar described U.S. Bank's workplace culture for branch managers, and that's exactly how she ran her branch, all

5

1    day every day. (*Id.* at 102:15-103:17, 150:5-152:15.)

2          Tew similarly testified that she spends more than 50% of her time on

3    management duties every week. (Tew Dep. 92:11-22, 94:16-21.) Although she

4    occasionally fills in for bankers on the teller line if they are absent or late, she always

5    understood U.S. Bank's expectation that she spend more than 50% of her time

6    managing. (*Id.* at 92:23-93:15, 125:3-12, 222:7-223:15.) She exercises significant

7    discretion and independent judgment, including the ability to structure her day and

8    direct the work of employees. (*Id.* at 204:8-24-205:3.)

9          Other deponents also testified about their management duties, exercising

10   discretion and independent judgment, and different ways of executing duties.[7]

11   **F.    Plaintiffs mischaracterize the branch manager job description and concede**
         **that only *some* branch managers spent more than half their time on**
12        **"banker duties" in only *some* workweeks.**

13         Although Plaintiffs originally defined the Rule 23 class as ***all*** California branch

14   managers (Dkt. 20), they now seek certification of a "narrower" class of branch

15   managers who in any week "spen[t] over 50% of their time performing the same

16   duties as non-exempt In-Store Bankers."[8] Plaintiffs then list out the ten duties that

17   they claim are "banker duties." Plaintiffs misleadingly suggest that the branch

18   manager job description lists these ten "banker duties." (Mtn. 6:1-14, 6:25-26 [citing

19   Robert Brown's declaration attaching the job description].) In fact, the job description

20   does not state that branch managers should directly engage in most of these "banker

21   duties" (*i.e.*, "in-store marketing and in-aisle prospecting," "opening accounts,"

22   ─────────────
     [7] Bullock Dep. 212:16-24, 215:23-216:1 (came up with and implemented hiring
23   program with other branch managers to manage understaffing); Herrera Dep. 57:24-
     60:11 (tests different strategies to achieve branch goals and then implements what
24   works best for her), 67:17-69:5 (each branch manager motivates team differently; she
     implemented a poker chip reward system); Porter Dep. 69:4-70:8 (his discretion to
25   direct and plan out his own day based on business need is not subject to review or
     approval), 147:9-148:16 (different branch managers have different styles and there is
26   more than one way to meet branch goals); Kelly Dep. 71:7-21, 61:14-62:10, 86:5-15
     (discretion to waive fees impacts branch revenue); Dancoe Dep. 163:18-166:19
27   (discretion to coordinate schedules of employees at two branches to cover shifts).
     [8] Plaintiffs state that they are "alternatively" seeking to certify a class of *all* branch
28   managers. But they have not submitted evidence or argument to meet their burden of
     showing such a class should be certified.

"handling teller transactions," "selling/cross-selling bank products and services," "referring customers to other areas of U.S. Bank," or "converting service opportunities into events"). (Ex. 46.) The job description's reference to "sales and customer service" does not suggest that managers should **make** sales, but rather **manage** them.[9]

Plaintiffs also misleadingly claim that the job description says that branch managers are expected to spend over 50% of their time on duties "many of which involve" the same duties as bankers. The job description actually states:

> Branch Manager is expected to spend more than 50% of his/her time on **management duties**, such as personnel management, handling customer disputes that are escalated from other branch staff, etc.[10] (Ex. 46.)

Now Plaintiffs' theory of the case is that some (but not all) branch managers' individual experiences **deviated** from U.S. Bank's expectations: "In reality, [branch managers] **often**" – notably not **always** – "spend over 50% of their workweek performing 'banker duties.'" (Mtn. 5:22-24.) Plaintiffs do not point to any uniform policy that caused this deviation, instead saying it happens for "**various reasons** stemming from USB's policies and procedures **or lack thereof**." (Mtn. 6:14-16.) Plaintiffs then discuss alleged understaffing[11] and the alleged impact of performance

---

[9] *See* "Essential Functions" nos. 4 and 5. (Ex. 46.)

[10] Plaintiffs also purport to list the branch manager duties from the job description (Mtn. 4:12-5:22) – but the list does not track the job description and omits key language. For example, Plaintiffs list "Resolving customer problems" as a duty from the job description. It actually states: "Manages quality customer experience delivery based on survey information, customer needs, wants, and expectations; . . . remains sensitive and responsive to both internal and external customers; builds distinctive levels of service by scheduling and monitoring staffing levels to ensure optimum customer sales and service; resolves problems quickly and effectively." (Ex. 46.)

[11] Plaintiffs' brief does not accurately reflect the testimony regarding staffing issues. While deponents talked about various circumstances that might leave a branch temporarily short-staffed, they also discussed their discretion to manage these issues. (Herrera Dep. 72:18-73:11 [using float coverage]; Aguilar 260:22-262:1 [discretion to assign overtime], 49:7-50:5, 222:7-14, 248:15-249:14 [managed branch to minimize sick leave and turnover]; Bullock Dep. 98:21-100:21 [hired bankers in advance of need to deal with turnover]; Dancoe Dep. 163:23-164:12 [while managing two branches, discretion to schedule bankers to cover needs at either branch]; Kelly 86:16-87:17 [manager's discretion to approve a banker's late-arrival affects manager's actual duties], 157:19-159:6; Porter Dep. 38:21-39:4.) Plaintiffs also ignore that short-staffing periods varied depending on many factors that further varied from branch to branch and over time for individual branches. (Aguilar Dep. 248:15-249:14; Bullock Dep. 290:19-291:3, 218:14-219:10; Dancoe 151:3-5, 151:24-154:2; Herrera Dep. 19:20-21:9; Kelly Dep. 76:23-77:14; Tew Dep. 92:17-94:15, 225:11-20.)

7

goals,[12] citing to the several depositions without claiming that those individuals are members of the proposed class.

**G.  Plaintiffs propose a vague and unsupported "trial plan" that does not allow U.S. Bank to assert individual defenses and cross-examine class members.**

Plaintiffs propose a "trial plan" with troubling key features:

- Certification of a class without knowing who is in it or its size.

- Notice sent to a broader class than the group certified.

- Rather than asking individuals if they want to opt out to preserve their rights, using class notice to tell individuals to opt out if they did not spend more than 50% of their time on a list of ten "banker duties" – without any explanation of how to handle individuals who do not receive or choose to ignore the notice.

- A trial on certain issues ***before*** determining who is in the class.

- Use of unidentified "survey techniques" to determine individual questions of time spent on a host of amorphous job duties – without any explanation of the method or sample size, and no expert testimony or evidence of reliability.[13]

- Assessing damages immediately following the survey – without ***any*** opportunity for U.S. Bank to cross examine class members.

**H.  Other putative class members**

Randomly sampled putative class members attest they spend minimal time performing the same duties as bankers[14] and the majority of their time performing

---

[12] Plaintiffs misstate testimony regarding performance goals. Deponents did not testify that branch managers are ill-equipped to meet performance goals without performing banker duties. (*See* testimony cited by Plaintiffs: Tew Dep. 80:11-12, 90:6-11; Bullock Dep. at 66:13-19; Decoeur Dec. ¶14; Porter Dep. at 61:16-25, 62:1-6.) Nor did they say anything to support Plaintiffs' conspiracy theory that U.S. Bank has branch managers modify their schedules as a cover-up. (*See* testimony cited by Plaintiffs: Porter Dep. at 59:9-13; Herrera Dep. at 98:21-22.) Plaintiffs also ignore key testimony that there is more than one way to meet branch goals (*see, e.g.*, Porter Dep. 147:9-148:16 [focus on staff development]) and that branch managers have full discretion to use the scheduling tool as they see fit. (*See* Aguilar Dep. 183:11-14, 183:18-184:22, 211:24-213:2; Bullock Dep. 173:13-24.)

[13] Plaintiffs suggest that class-member specific records can be used to assist in confirming class membership. (Mtn. 20:15-19.) But Plaintiffs already attempted to do this during discovery, and U.S. Bank produced multiple types of individualized data for a randomly selected sample of individuals. If class-member-specific records could determine class membership, then Plaintiffs would have identified those records and explained how they impact class membership. They have not. (Chui Dec. ¶3.)

[14] *See, e.g.*, Abarca Dec. ¶6 ("Even if the branch is not fully staffed, I will not spend more than 35% of my time running teller transactions or performing the same duties as my bankers"); Alvarado Dec. ¶12 (less than 20% of time on teller transactions and banker duties); Gutierrez Dec. ¶7 (5-10% of time on duties that are not management related); Haider Dec. ¶12 (5-10% of my time is spent performing teller transactions;

8

management duties.[15] Other putative class members also describe a breadth of experiences, contradicting assertions in Plaintiffs' form declarations.[16] Many putative class members publicly hold themselves out as having significant management responsibility.[17]

## III.  A CLASS CANNOT BE CERTIFIED

### A.  Plaintiffs bear the burden of proof.

Plaintiffs bear the burden of demonstrating that their case meets the requirements of Fed. R. Civ. Proc. 23. *Vinole*, 571 F.3d at 944 n.9. The court must conduct a "rigorous analysis" to determine whether Plaintiffs have met their burden. *Kilbourne v. Coca-Cola Co.*, 2015 WL 5117080, *5 (S.D. Cal. July 29, 2015). This necessarily entails some overlap with the merits of the underlying claim. *Id.*.

### B.  Plaintiffs have failed to establish there is an ascertainable class.

"[T]he party seeking certification must demonstrate that an identifiable and ascertainable class exists." *Xavier v. Philip Morris USA Inc*., 787 F. Supp. 2d 1075,

---

"As Manager, it is not my job to be on the teller line"); Russell Dec. ¶20 (30% of time or less on teller line; "If a manager is spending more than that, that is by choice"; always spent more than 50% of time on management duties).

[15] Describing time spent on management duties: Burgin Dec. ¶7 (75-80%); Maturino Dec. ¶6 (80%); Mia Dec. ¶9 (90-100%); Tandjung Dec. ¶22 (80%); Santiago Dec. ¶10 (more than 50%); Traboulsi Dec. ¶10 (more than 50%).

[16] *See, e.g.*, Mia Dec. ¶10 (being "accountable for sales and service activities" as a manager meant being responsible for reviewing branch financials and sales reports to identify strengths and areas of opportunity at her branch and monitoring employees to make sure they were doing the sales activities she assigned); Ruemenapp Dec. ¶11 (describing responsibilities as manager relating to being accountable for branch's sales and service activities); Rockefeller Dec. ¶8 (management responsibility for "maintaining the operational integrity of the branch" was to "ensure that all my bankers were educated and trained on correct operations, directing them on how to conduct sound operations, and being available to answer their questions"); Torres Dec. ¶7 ("I have specific responsibilities for resolving customer issues that are different than the way my bankers are responsible for resolving customer service issues," such as assessing and resolving customer fee waiver requests, which her bankers do not have authority or discretion to handle).

[17] *See, e.g.*, Ex. 27 (Kaldi: "Provide on-site leadership, motivation, and direction to branch staff"); Ex. 33 (Rohme: "recruiting champion for a district of 15 branches and successfully screened, interviewed and hired sales professionals continuously"); Ex. 36 (Sims: "Regularly and customarily directs the work of staff… exercises discretion and independent judgment in performing duties"); Ex. 37 (Sinha: "I assisted District Manager to oversee 4 branches for coaching employees on sales, employee development, operations and managing financials"); Exs. 13-26, 28-32, 34-35, 38-44.

9

1089 (N.D. Cal. 2011). "A class should be precise, objective, and presently ascertainable." *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 610 (S.D. Cal. 2015). "Defining the class is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action." *Daniel F. v. Blue Shield of Cal.*, 305 F.R.D. 115, 121-22 (N.D. Cal. 2014).

### 1.   There is no objective, reliable way to determine class membership.

A court must be able to ascertain class membership from objective and verifiable criteria. *Xavier*, 787 F. Supp. 2d at 1089. Even if the class definition asks an objective *question*, it is not ascertainable if the *answer* depends on individual *subjective estimates*. *Id.* (not ascertainable if membership requires estimate of number of cigarettes smoked); *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 441 (N.D. Cal. 2014) (not ascertainable if membership requires memory of when and what brand of cat litter purchased).[18]

Plaintiffs argue that the Court could determine membership by asking individuals to make subjective estimates of time spent on a variety of job duties on a week by week basis, over the course of years – a much more complicated question than the number of cigarettes smoked or brand of kitty litter purchased. Memory problems aside, individuals could interpret the amorphous list of "banker duties" differently. For example, "Being accountable for sales and service activities" could be interpreted as *performing* sales or *managing* the activities.[19] Also, branch managers know they have a stake for pecuniary gain, and therefore could have self-interest bias.

---

[18] *See also Bruton v. Gerber Prod. Co.*, 2014 WL 2860995, *7-9 (N.D. Cal. June 23, 2014); *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, *10 (N.D. Cal. June 13, 2014); *Martin v. Pac. Parking Sys. Inc.*, 583 F. App'x 803, 804 (9th Cir. 2014).
[19] *See, e.g.*, Aguilar Dep. 116:20-118:20, 284:10-285:16 (managing sales is a manager function, requires daily discretion, and affects bottom line); Bullock Dep. 53:7-21, 137:15-138:11, 295:5-10; Dancoe Dep. 200:17-202:14; Herrera Dep. 151:17-25, 153:21-155:5, 186:17-187:14; Kelly Dep. 101:7-13; Butarbutar Dec. ¶8 ("To me, being accountable for sales and service activities as a Branch Manager meant that my job was to help all of my bankers hit their individual sales goals, not try to complete sales directly myself."); Torres Dec. ¶8; Umbenhaur Dec. ¶7.

*Xavier*, 787 F. Supp. 2d at 1090. Courts therefore routinely refuse to allow class membership to rest solely on a putative class member's sworn statement.[20] Plaintiffs' proposal to allow a potentially biased group to self-identify using subjective estimates demonstrates that the class is not ascertainable.

### 2.     It is not administratively feasible to determine the class.

Even if objective criteria exist, the class is only ascertainable if it is "administratively feasible" to determine class membership. *Guzman*, 305 F.R.D. at 610; *Spencer v. Beavex, Inc.*, 2006 WL 6500597, *7 (S.D. Cal. Dec. 15, 2006). The method to identify the class cannot be "excessively complex" or "involve[] individualized analyses."[21] *Id*. at *9; *see also Xavier*, 787 F. Supp. 2d at 1089.

Plaintiffs' proposed class definition requires a fact-specific, individual inquiry of which branch managers "for at least one workweek, [spent] over 50% of their time on the same duties as non-exempt bankers." ***"Where a threshold inquiry is necessary to determine class membership, the benefits to proceeding as a class action are eviscerated,"*** and courts deny class certification. *Mike v. Safeco Ins. Co.*, 223 F.R.D. 50, 54 (D. Conn. 2004) (exemption misclassification case; required determining what work individuals predominantly performed); *see also Spencer*, 2006 WL 6500597, *9 (required determining which drivers drive less than 51% of their routes); *Guzman*, 305 F.R.D. at 612 (required determining who opted out of arbitration provision). Plaintiffs' multi-step method for determining the class is too complex, unrealistic, and unfair – especially given: (a) the variations in Plaintiffs' deposition and declaration

---

[20] *See Marcus v. BMW of North America, LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("We caution … against approving a method that would amount to no more than ascertaining by potential class members' say so. . . . Forcing [defendants] to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications"); *Xavier* 787 F. Supp. 2d at 1090; *Red v. Kraft Foods, Inc.*, 2012 WL 8019267, *5 (C.D. Cal. April 12, 2012); *In re Clorox*, 301 F.R.D. at 440-42; *In re Hulu Privacy Litigation*, 2014 WL 2758598, *15 (N.D. Cal. June 17, 2014); *Carrera v. Bayer Corp.*, 727 F.3d 300, 308-12 (3d Cir. 2013).

[21] Class treatment is also inappropriate where the class definition requires determining the merits of individuals' claims. *Stone v. Advance Am.*, 278 F.R.D. 562, 569 (S.D. Cal. 2011); *Daniel*, 305 F.R.D. at 125.

testimony (*Spencer*, 2006 WL 6500597); and (b) the process of "confirming" who is in the class *after* a trial effectively allows anyone who did not like the outcome to avoid its preclusive effect. *See Xavier*, 787 F. Supp. 2d at 1089.[22]

### 3.   The fact that Plaintiffs cannot identify the class to notify demonstrates that class certification is not appropriate.

Class certification requires defining a class to whom notice will issue. *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 WL 8128621, *5 (C.D. Cal. Jan. 7, 2008) *aff'd and remanded*, 492 F. App'x 710 (9th Cir. 2012). Plaintiffs' answer to the question of "Who would receive notice?" is *all* branch managers (even those who are not in the defined class). (Mtn. 19:26.) This highlights the fact that the defined class is not *presently* ascertainable. It also *eviscerates the Rule 23 requirements*. Plaintiffs have not cited a single case supporting their request to permit notice to a group of individuals without knowing whether or not they are in the class, and without establishing the Rule 23 requirements as to all individuals to be notified.[23]

Plaintiffs cannot avoid their burden of proof by arguing that U.S. Bank failed to keep records of who was in the class. Plaintiffs cite *Bruton*, 2014 WL 2860995 –in

---

[22] *See also Xavier*, 787 F. Supp. 2d at 1089 (definition with unclear applicability will invite "satellite litigation . . . over who was in the class in the first place").

[23] Plaintiffs cite cases to suggest the class members do not need to be ascertained prior to certification. None of these allowed notice to go to a group of individuals that was larger than the proposed class. In *Huynh v. Harasz*, 2015 WL 7015567, *13–14 (N.D. Cal. Nov. 12, 2015), there was no issue with ascertaining the class; instead the issue was that the original class as proposed lacked a necessary date restriction, which was easily remedied. In *Mauro v. Gen. Motors Corp.*, 2008 WL 2775004, *1 (E.D. Cal. July 15, 2008), the issue was whether the class was sufficiently defined for the purposes of *pleading* under the Rule 12(b)(6) standard. In *Heffelfinger*, 2008 WL 8128621, the plaintiffs' defined class (IT workers who were denied overtime in violation of the law) appeared to be the result of imprecise drafting. *Id.* at *1, 11. The court fixed the class definition to match the gravamen of plaintiffs' claim that *all* IT workers were entitled to overtime. Plaintiffs do not argue that all branch managers spent more than half their time on so-called "banker duties" – nor can they based on the evidence. Thus, Plaintiffs' definition cannot be remedied in the same way. *Krueger v. Wyeth, Inc.*, 310 F.R.D. 468 (S.D. Cal. 2015) stands in contrast to the many cases that find that self-identification is not an acceptable way of determining class membership. It is distinguishable because: (1) the class definition was objective, looking to the easily identifiable group of individuals who used a certain drug; (2) the issue of who was exposed to representations about the drug was not troubling because of a widespread advertising campaign; and (3) there were no due process concerns because any liability is determined in the aggregate, with total sales measuring damages regardless of class size. *Id.* at 472, 474-76. That is not the case here.

1  which the court would not deny certification based **"solely"** on lack of consumer data,

2  but still denied class certification because determining class membership was not

3  administratively feasible. *Id.* at 5. Here, the class is not ascertainable **solely** because of

4  a lack of records but also because the class is cannot be objectively determined.

5      Plaintiffs' argument assumes that U.S. Bank should have kept records of time

6  spent on so-called "banker duties." But there is no such legal requirement. And

7  tracking Plaintiffs' list of "banker duties" makes no sense in light of the controversy

8  over whether they are exempt or not. Plaintiffs' argument is circular – allowing them

9  to achieve certification by ***purposefully narrowing an identifiable group*** (of ***all***

10  branch managers) ***to a group that cannot be ascertained*** through records and without

11  individualized inquiry. Plaintiffs have not defined an ascertainable class.

12  **C.   Plaintiffs cannot establish numerosity as to a speculative class.**

13      Plaintiffs had access to all California branch managers, but only submitted

14  evidence that 29 (*i.e.*, the 27 California managers who signed form declarations[24] and

15  two Plaintiffs) spent the majority of their time on so-called "banker duties."[25] This is

16  not sufficient to establish numerosity. *Peterson v. Albert M. Bender Co.*, 75 F.R.D.

17  661, 667 (N.D. Cal. 1977) (35 to 45 did not meet numerosity); *E.E.O.C. v. Kovacevich*

18  *"5" Farms*, 2007 WL 1174444, *21 (E.D. Cal. Apr. 19, 2007).

19      Plaintiffs' cannot establish numerosity using ***all*** branch managers. The breadth

20  of that group "outstrips the confines of the plaintiffs' proffered definition." *Hurt v.*

21  *Shelby Cty. Bd. of Educ.*, 2014 WL 4269113, *9 (N.D. Ala. Aug. 21, 2014) (failure to

22  establish how many individuals in the class where additional questions must be

23  answered to determine class membership); *see also Mike*, 223 F.R.D. at 54 (refusing

24  to make Rule 23(a) findings "with respect to an undefined and hypothetical class").

25  ──────────
[24] Plaintiffs' declarants Amanda Jones and Leticia Molina declarants are not
26  California putative class members. (*See* Dkt. 58, PageID 1798; Chui Dec. ¶6.)
[25] U.S. Bank disputes that these individuals meet the class definition, including
27  because: (a) Plaintiffs' declarations contradict their deposition testimony; (b) U.S.
Bank has not yet cross-examined the 27 declarants; (c) the so-called "banker duties"
28  in the declarations do not align with the so-called "banker duties" in the class
definition; and (d) so-called "banker duties" could be interpreted as manager duties.

**D.   Resolving the claim of misclassification requires individualized inquiries that cannot be answered on a classwide basis–and therefore common issues do not exist, let alone predominate.**

**1.   Rule 23(a)(2) commonality and Rule 23(b)(3) predominance**

Plaintiffs must show that "there are questions of law and fact that are common to the class." Fed. R. Civ. Proc. 23(a)(2). "That common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims ***in one stroke***." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification is not the raising of common questions–even in droves–but, rather the capacity of a classwide proceeding to generate common ***answers*** apt to drive the resolution of the litigation." *Id.*. The Court must conduct a "rigorous analysis" to determine if Plaintiffs have offered "significant proof" of a common policy or practice "that could affect the class as a whole." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). Plaintiffs must also establish that the common issues ***predominate*** (Fed. R. Civ. Proc. 23(b)(3))–a "far more demanding" standard than commonality. *Guzman*, 305 F.R.D. at 609.

Liability in this case turns on whether branch managers are exempt from overtime. Although exemption is a defense, because Plaintiffs have chosen to claim classwide misclassification, Plaintiffs have "the ultimate burden of proving misclassification at a class action trial." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 482 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011). U.S. Bank asserts multiple exemption defenses–executive, administrative, outside sales, and combination–each of which has multiple elements.

Plaintiffs only address the "primary duties" element of the executive exemption. Even if they could show commonality and predominance as to this element, that is not sufficient. They have either: (a) failed to establish commonality and predominance as to the other exemptions and the executive exemption's other requirements; ***or*** (b) conceded that these issues are not in dispute and can be resolved in U.S. Bank's

14

favor. Either way, class certification is not appropriate.

As to the "primary duty" of the executive exemption, Plaintiffs **ask** many questions, but offer no common method of proof–let alone "***significant proof***"–to drive the answers. Nor have they addressed the individualized issues that predominate.

### 2.    Plaintiffs have not identified a common policy relevant to exemption.

Plaintiffs' first "common question" asks: "Whether IBMs shared similar job duties based on USB's policies, practices, expectations, and operational standardization." But Plaintiffs neither clearly identify the policies, nor state how any policies provide common proof of misclassification. Plaintiffs argue that branch managers are "required to perform Banker Duties for ***various reasons*** stemming from [U.S. Bank's] policies and procedures ***or lack thereof***." (Mtn. 6:14-16.) It is unclear what these "various reasons" were or what was lacking. However, Plaintiffs indicate:

- "[E]ach in-store branch follows the same USB dictated protocol, policies, and goals" (citing only to the branch manager job description and the depositions of branch managers Tew and Aguilar). (Mtn. 7:7-8.)

- There are issues with understaffing and performance goals (citing to the eight depositions of branch managers) (Mtn. 6:16-7:4.)[26]

Plaintiffs do not establish that these issues ***had any impact*** on branch managers' duties and time spent on those duties–let alone a uniform impact. None of Plaintiffs' declarants discuss these issues or their impact on job duties. And there is no evidence that branch managers who did testify about these issues uniformly spent more than 50% of their time on banker duties as a result of these issues.[27] These issues therefore cannot support class certification. *See Pedroza v. Petsmart, Inc.*, 2013 WL 1490667, *7 (C.D. Cal. Jan. 28, 2013) (scheduling system, staffing reports, and other business records had "limited value" as proof of classwide misclassification).

---

[26] As discussed above, Plaintiffs mischaracterize the underlying testimony and ignore other testimony regarding staffing and performance expectations.

[27] Instead, Aguilar and Tew testified that they spent more than 50% on management duties each week, while Herrera testified that she has consistently spent more than 50% of her time on management duties under her current district manager (while her experiences differed under the previous district manager). (Aguilar Dep. 293:8-11; Tew Dep. 92:20-22, 94:16-21; Herrera Dep. 91:1-10, 199:12-200:7.)

15

Plaintiffs' theory that they perform banker work as a consequence of U.S. Bank's policies inherently requires inquiry into the specific causes and effects as it pertains to each workweek for each branch manager. *Weigele v. FedEx Ground Package Sys., Inc.*, 267 F.R.D. 614, 622 (S.D. Cal. 2010). And the theory does not override the need to perform individualized analyses of what work branch managers actually performed week-by-week. *Williams v. Lockheed Martin Corp.*, 2011 WL 2200631, *15 (S.D. Cal. June 2, 2011) ("the need for individual inquiry is not reduced by the presence of centralized control or standard policies governing how employees spend their time"). The *Spainhower* plaintiff also attempted to rely on short staffing, and Judge Nguyen still denied class certification because of likely variances in how individual branch managers spend their time. *Spainhower*, 2010 WL 1408105, *4.

Finally, the existence of a job description–particularly one that sets forth a range of duties and an expectation that branch managers spend more than 50% of their time on management–does not support class certification.[28]

### 3. Individualized determinations must be made as to what duties branch managers performed and whether they are exempt.

Plaintiffs' next two "common questions" ask: "Whether the shared duties included the same tasks performed by non-exempt In-Store Bankers" and if so, "Whether the same tasks performed by In-Store Bankers were exempt or non-exempt." The answer to the first question will vary person-by-person and week-by-week. For example, even if a branch manager performs teller transactions just like bankers, the amount of time spent varies depending on a multitude of factors.[29] And

---

[28] *See Rosenberg v. Renal Advantage, Inc.*, 2013 WL 3205426, *8 (S.D. Cal. June 24, 2013), *aff'd*, 649 F. App'x 580 (9th Cir. 2016); *Williams*, 2011 WL 2200631, *13-14; *Sinohui v. CEC Entm't, Inc.*, 2016 WL 3475321, *5 (C.D. Cal. Mar. 16, 2016).
[29] *See* Esqueda Dep. 28:6-30:9 (factors affecting transaction volume of branch include proximity to other in-store branches, and closing time of competing local banks and branches), 137:23-138:1, 138:9-140:2, 224:12-23, 225:22-25; Barker Dep. 230:9-22, 267:18-268:8; Bullock Dep. 53:7-54:21, 98:21-100:21, 136:14-137:22 (because of her branch's low transaction volume, a single banker could handle all transactions during less busy times of the day; she directed customers to a banker before doing transactions herself); Herrera Dep. 142:14-144:19 (experience level of staff and how quickly new-hires learn directly affects time spent on teller line); Kelly Dep. 86:16-87:17, 175:13-25, 176:3-177:5; Porter Dep. 60:16-20; Tew Dep. 222:7-223:15;

16

some weeks managers performed zero or very few teller transactions.[30]

The first question also sets up a false dichotomy: "banker duties" vs. manager duties. Whether branch managers and bankers did some of the same duties is irrelevant to determining liability. *See Patel v. Nike Retail Servs., Inc.*, 2016 WL 1241777, *11 (N.D. Cal. Mar. 29, 2016).[31] The question of whether duties are exempt or not is "a mixed question of fact and law." *Sav-On Drug Stores, Inc. v. Sup. Ct.*, 34 Cal. 4th 319, 330 (2004). ***Identical duties*** tasks may be "exempt" or "nonexempt" based on their ***purpose***. *Batze v. Safeway, Inc.*, --- Cal. Rptr. 3d. ---, 2017 WL 1231382, *19 (Cal. App. Apr. 4, 2017); *Patel, Inc.*, 2016 WL 1241777 at *11–12.

> A task performed because it is "helpful in supervising the employees or contribute[s] to the smooth functioning of the department" is exempt, even though the identical task performed for a different, nonmanagerial reason would be nonexempt. *Batze*, 2017 WL 1231382, *19; *Patel*, 2016 WL 1241777, *11.

Here, determining the purpose of the task is individualized because it will depend on the way and the reasons that an individual branch manager did the job duties.[32]

---

Aguilar Dep. 211:2-23; Ruemenapp Dec. ¶15; Rockefeller Dec. ¶7. Teller transactions also only take a few minutes on average. (Barker Dep. 185:21-186:8 [transactions can take two minutes or less; on average she could do 50 transactions per hour]; Esqueda Dep. 159:21-160:8 [2-3 minutes]; Porter Dep. 73:9-22 [1-5 minutes and maybe less]; Herrera Dep. 76:20-77:4 [3-4 minutes]; Kelly Dep. 155:1-156:9.)

[30] Barker performed only 13 transactions the week of August 26, 2012 (3 on Wednesday, 9 on Thursday, and 1 on Friday of that week), and Plaintiffs' declarants Kellie Redmond and Michael Sternquist each performed only 3-4 transactions that same week. (Burmeister Dec. ¶¶5, 17, 20.) As another example, Plaintiffs' declarant Joseph Quagliata performed ***no*** teller transactions during the week beginning September 16, 2012, performed ***one*** transaction during the week of September 23, 2013, performed 15 transactions during the week of September 30, 2013, performed ***no*** transactions during the following two weeks, and performed ***one*** transaction during the week of October 21, 2012. (Burmeister Dec. ¶22.)

[31] *See also Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 239 (C.D. Cal. 2006), *aff'd in part, rev'd in part*, 275 F. App'x 672 (9th Cir. 2008), *opinion vacated on reh'g*, 464 F. App'x 636 (9th Cir. 2011), *and aff'd*, 464 F. App'x 636 (9th Cir. 2011) (just because an hourly employee performs a duty does not mean it is non-exempt).

[32] Plaintiffs incorrectly assume that just because a branch manager is at the teller line or customer-facing, he or she is performing "banker duties." But there are managerial purposes for being at the teller line and even for running transactions. (*See, e.g.*, Barker Dep. 175:21-176:1 [bankers learn by watching manager; modeling behavior], 219:16-220:11 [while running transactions, she was simultaneously approving banker transactions, answering banker questions, monitoring banker performance, handling escalated customer complaints, acting as the face of the bank, and coaching], 242:6-19 [supervising "all day long" on the teller line], 276:10-14; Esqueda 126:5-127:20 ["constant coaching" of bankers, including observing and coaching while on the line], 153:4-11, 211:8-, 225:3-6 [leads by example], 229:16-230:13 [models customer

The so-called "banker duties" are amorphous, and interpreted and carried out in various ways.[33] *See Perry-Roman v. AIG Retirement Svcs., Inc.*, 2010 WL 8697061, *3 (C.D. Cal. Feb. 24, 2010) (despite parties' attempts to contrive finite lists of duties, they were amorphous; "the Court is convinced that the actual activities vary greatly on a [person-by-person] basis"). Plaintiffs' theory of commonality fails because the list of "banker duties" is not finite and definite. *See Weigele* 267 F.R.D. 614 at 623; *Morse v. Marie Callender Pie Shops, Inc.*, 2011 WL 13115429, *3-5 (S.D. Cal. May 12, 2011).

No case has certified a class action based **solely** on the common question of whether certain tasks are exempt or non-exempt. The cases Plaintiffs cite for the proposition that task classification presents a common question **also** involve a showing that tight centralized control and policies dictated how employees do their jobs[34]–which showing Plaintiffs have not made here (as discussed above).

---

service for training purposes]; Porter Dep. 75:3-76:16, 59:14-24, 60:12-61:6, 62:7-64:1, 64:12-15 [on a busy Saturday while understaffed, he manages the appearance of the branch by sitting on the teller line where he performs managerial duties despite being "customer facing"; directs customers to bankers before himself]; Bullock Dep. 75:9-20; Herrera Dep. 74:10-76:19; Torres Dec. ¶9; Umbenhaur Dec. ¶9 [sometimes performed similar work as banker to ensure the smooth functioning of the branch while simultaneously modeling good behavior, observing and evaluating employees, and checking on the quality of customer service being provided].

[33] For example, branch managers interpret and perform the so-called "banker duty" of "being accountable for sales and service activities" to include: initiating or spearheading their own promotions (Aguilar Dep. 267:23-268:6; Herrera Dep. 64:11-67:12,160:22-163:11, 195:8-197:7); performing teller transactions for the purpose of training employees (Herrera Dep. 142:14-144:19; Mia Dec. ¶11, Torres Dec. ¶8); modeling good sales behaviors for employees (Bullock Dep. 50:22-51:18; Butarbutar Dec. ¶10); reviewing branch financials and reports to adjust branch strategy and direct bankers' sales activities (Imkamp Dec. ¶11; Maclean Dec ¶8; Teders Dec.¶7; Umbenhaur Dec. ¶7); and deciding how to divide branch goals when assigning and tailoring individual sales goals to bankers (Koh Dec. ¶8; Ruemenapp Dec. ¶11). As another example, branch managers interpret and perform the so-called "banker duty" of "maintaining operational integrity" to include: reviewing new account openings to make sure employees followed procedures, evaluating new accounts for compliance, and holding employees accountable for any operational inconsistencies (Rockefeller Dec. ¶8); exercising discretion to delegate authority to senior bankers to approve or perform certain additional transactions and tasks (Teders Dec. ¶8); and training and directing bankers on correct operations (Ruemenapp Dec. ¶13; Williams Dec. ¶9).

[34] *Sav-On*, 34 Cal.4th at 327; *Alba v. Papa John's USA, Inc.*, 2007 WL 953849, *2 (C.D. Cal. Feb. 7, 2007); *Martinez v. Joe's Crab Shack Holdings*, 231 Cal. App. 4th 362, 380–81, (2014), *as modified on denial of reh'g* (Dec. 3, 2014). *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, (2014) is inapposite because it involved reversing a denial of class certification to a group of individuals who claimed they were misclassified as independent contractors based on the trial court's

18

### 4. Determining the amount of time branch managers spent on a mix of duties is inherently individualized.

The last two of Plaintiffs' "common questions" explicitly beg for answers that vary both by individual ***and*** by every single workweek: "Whether did [sic] IBMs spent over 50% of their time during a workweek performing tasks that are non-exempt" and "Whether IBMs worked overtime hours during the workweek."

Commonality is not met because Plaintiffs have not provided any way to generate common answers to these questions. *See Pedroza*, 2013 WL 1490667, *11. The only way to determine who is in the class is to evaluate individuals' duties each workweek–so the merits of branch managers' claims "dovetails precisely with their membership in the class, thus, commonality is not met." *Stone*, 278 F.R.D. at 570.

And predominance is not met because determining exempt classification is a fact-intensive inquiry that requires an individualized analysis of how branch managers actually spent their time. *In re Wells Fargo*, 571 F.3d at 959; *Vinole*, 571 F.3d at 945; *Spainhower*, 2010 WL 1408105, *4. This is true even where common proof can be used to determine whether duties are exempt or not. *Velazquez v. Costco Wholesale Corp.*, 2011 WL 4891027, *8 (C.D. Cal. Oct. 11, 2011).

This Court has never certified a Rule 23 class in an exemption misclassification case, except once, and that case was abrogated and later decertified.[35] Instead, this Court routinely denies class certification of misclassification cases–even in the face of common policies–because individual inquiries are required to determine how individuals spend their time. *Weigele*, 267 F.R.D. at 623 (denying class certification despite some common issues–*i.e.*, that managers performed a finite set of tasks, that

---

misunderstanding of the legal test for determining employment. *Id.* at 528. Plaintiffs cite *Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715 (2004) and *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) for the proposition that some variation among individual employees does not defeat predominance. But the Ninth Circuit has since made it clear that it is an abuse of discretion to ignore relevant individual inquiries. *In re Wells Fargo*, 571 F.3d at 959. These cases are also distinguishable because they involve individual issues regarding damages, not liability.

[35] *Weigele v. Fedex Ground Package Sys., Inc.*, 2008 WL 410691, *2 (S.D. Cal. Feb. 12, 2008), abrogated by *Vinole*, 571 F.3d 935, decertified *Weigele*, 267 F.R.D. 614.

defendant provided standardized training and a standard work process, and that defendants set performance expectations–because ***"the predominant issue is determining how Plaintiffs spent their time"***); *Rix v. Lockheed Martin Corp*., 2011 WL 890744, *8 (S.D. Cal. Mar. 14, 2011) (despite the existence of common operating manuals and common programs, these "proffered types of proof do not diminish the Court's need to conduct individualized inquiries as to what types of duties each ISR performs in his or her working day"); *Williams*, 2011 WL 2200631, *13; *Morse*, 2011 WL 13115429, *5. Courts across California agree.[36] This case is no exception; time spent on duties must be determined individually. This is particularly true where branch managers have significant discretion as to their daily work routine. *Spainhower*, 2010 WL 1408105, *4. Class certification should be denied.

>          **5.    Individualized issues are required to determine whether branch managers met U.S. Bank's expectations and whether those expectations were realistic.**

Determining exemption requires an examination of actual job duties "first and foremost" (IWC Wage Order No. 4-2001 § 1(A)(1)(e)), ***but***:

> . . . the trial office court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job. *Ramirez v. Yosemite Water*, 20 Cal.4th 785, 802 (1999); *see also* IWC Wage Order No. 4-2001 § 1(A)(1)(e).

This prevents an employee who "falls below the 50 percent mark due to his own substandard performance" from "evad[ing] a valid exemption." *Id.*

U.S. Bank expects that its branch managers spend more than 50% of their time

---

[36] *See Patel*, 2016 WL 1241777, *11; *Zackaria v. Wal-Mart Stores, Inc.*, 2015 WL 2412103, *16 (C.D. Cal. May 18, 2015); *Rea v. Michaels Stores, Inc.*, 2014 WL 1921754, *3 (C.D. Cal. May 8, 2014); *Aburto v. Verizon Cal. Inc.*, 2012 WL 10381, *4 (C.D. Cal. Jan. 3, 2012), *abrogation on other grounds recognized by Shiferaw v. Sunrise Senior Living Mgmt., Inc.*, 2014 WL 12585796 (C.D. Cal. Jun. 11, 2014); *Velazquez*, 2011 WL 4891027, *7; *Friend v. Hertz Corp.*, 2011 WL 750741, *6-8 (N.D. Cal. Feb. 24, 2011); *Cruz v. Dollar Tree Stores, Inc.*, 2011 WL 2682967, *8 (N.D. Cal. July 8, 2011); *In re Wells Fargo II*, 268 F.R.D. 604, 611 (N.D. Cal. 2010); *Walsh v. IKON Office Solutions, Inc.*, 148 Cal. App. 4th 1440, 1458 (2007); *Sepulveda*, 237 F.R.D. at 246; *Jimenez v. Domino's Pizza, Inc.*, 238 F.R.D. 241, 251 (C.D. Cal. 2006).

20

on management; this is communicated by the job description and district managers. (Herrera Dep. 99:4-101:18, 199:12-200:7; Porter Dep. 47:9-49:7.) Determining the merits of this case turns on whether individual branch managers who spent more than 50% of their time on non-exempt duties failed to meet U.S. Bank's expectations and whether those expectations were realistic. *Ramirez*, 20 Cal.4th at 802; *Sepulveda*, 237 F.R.D. at 246. Plaintiffs provide no way to prove these issues on a classwide basis.

Branch managers have testified that the expectation was realistic–and that they met the expectation.[37] Even if these managers were excluded from the class, this evidence tends to show that the expectation was realistic for others. *See Batze*, 2017 WL 1231382, *21. To the extent that individuals claim that the expectations were not realistic, that determination would necessarily turn on facts and circumstances specific to that individual–and that individual's credibility.[38] U.S. Bank would need to cross-examine every branch manager who did not meet its expectations to determine if that individual failed to meet expectations because of his or her own substandard performance or due to circumstances outside of that individual's control. Therefore common proof cannot drive the resolution of the claims of a narrowed class of branch managers who spent more than 50% of their time on non-exempt duties.

### 6. Plaintiffs' form declarations have limited evidentiary value.

Plaintiffs' fill-in-the-blank declarations claim that the individuals spent more than 50% of their time on a list of eleven "banker duties" – only nine of which match the "banker duties" in Plaintiffs' class definition. Because they group the tasks together, "the appearance of so much as a single exempt task in the declaration

---

[37] Aguilar Dep. 291:3-15, 293:8-11; Butarbutar Dec. ¶6; Mia Dec. ¶6; Csillag Dec. ¶6; Ruemenapp Dec. ¶8; Torres Dec. ¶5; Umbenhaur Dec. ¶6; Williams Dec. ¶6.

[38] For example, Esqueda testified that she had to spend more time running transactions at the second branch she managed because it had the highest transaction volume in the district and an inexperienced team of bankers. (Esqueda Dep. 26:1-18, 30:3-9, 97:16-19.) Both Esqueda's manager and her employees complained that she was not coaching enough, and she was ultimately terminated. (*Id.* at 157:6-19, 298:5-8.) While U.S. Bank contends that its expectations were still realistic, if Esqueda contends that they were not, she must do so in reference to her branch's unique circumstances because other branch managers were able to meet the expectations.

seriously impacts the value of the declaration." *Sepulveda.*, 237 F.R.D. at 239. They also appear to improperly characterize any task performed by an hourly employee to be non-exempt. *Id.* Thus, the declarations have "questionable value." *Id.*

Plaintiffs' declarations also have limited value because Plaintiffs' deposition testimony casts doubt over their statements in their declarations. *Pedroza*, 2013 WL 1490667, *8. While Plaintiffs denied U.S. Bank the ability to cross-examine their other declarants (by failing to produce the declarations, which they obtained before the close of discovery and which were responsive to written discovery),[39] the publicly available LinkedIn profiles of the declarants tout their managerial duties, for example:

- Ricky Aquino: "***Responsible for management of in-store branch*** including the leadership for sales, customer service, regulatory, policy and compliance, and facility management… and ***exercised discretion and independent judgment in performing duties***." (Ex. 14.)

- Mike Soto: "***Involved primarily with the management and administration*** of the branch… [p]rovide on-site leadership, motivation and direction to the branch staff." (Ex. 38.)

- Tony Alvarado: "***the primary duty is management and administration*** of the branch… regularly and customarily directs the work of the staff." (Ex. 13.)

Several other declarants submitted résumés to U.S. Bank emphasizing their management duties and discretion as U.S. Bank branch managers,[40] while yet other declarants' teller transaction records show them conducting very few transactions.[41] This casts doubt over the credibility of the declarations.

**E.    A class action is not superior because a trial on the merits and class identification require adjudicating individualized issues.**

Plaintiffs cannot satisfy Rule 23(b)(3) because the difficulties in managing a

---

[39] Chui Dec. ¶4.
[40] *See* Ex. 47, Allahverdi résumé ("successfully managed branch"); Ex. 48, Desiere résumé ("leadership responsibilities include: monthly sales associate training meeting; weekly sales associate performance tracking; district point person for lending; cluster leader–responsible for overseeing performance of three peer branches"); Ex. 49, Mokrani résumé ("manage branch operations on a daily, weekly, monthly and quarterly basis"); Ex. 50, Redmond résumé ("in charge of the entire district's new hire program including managing other bankers in other branches;" "involved in district wide budgeting").
[41] *See* Burmeister Dec. ¶¶10, 16-17 (during the same two week period in August 2012, Desiere performed zero to twelve transactions in any given day, while Redmond performed only four transactions ***total*** during the entire two weeks).

class action with individualized issues outweigh the other superiority factors. *Weigele*, 267 F.R.D. at 624-25. Here, individualized proofs are necessary to determine both the scope of the class and whether branch managers are exempt. Thus a class action is not superior. *In re Clorox*, 301 F.R.D. at 449; *Mike* 223 F.R.D. at 54; *Mendoza v. Home Depot, U.S.A. Inc.*, 2010 WL 424679, *10 (C.D. Cal. Jan. 21, 2010).

**F.      Plaintiffs cannot establish typicality.**

Plaintiffs cannot establish Rule 23(a) typicality. Because of the wide variations in branch managers' experiences, discussed above, "there is no 'typical' claim or experience, certainly not Plaintiffs' experience, that can be extrapolated classwide." *Sanchez v. Wal Mart Stores, Inc.*, 2009 WL 1514435, *3 (E.D. Cal. May 28, 2009); *see also Rosenberg*, 2013 WL 3205426, *9.

**G.      Plaintiffs' "trial plan" does not provide an independent basis for class certification, does not describe any reliable means for determining liability on a classwide basis, and violates U.S. Bank's due process rights.**

**1.      Plaintiffs cannot manufacture the Rule 23 requirements by proposing a "trial plan."**

Plaintiffs must be "able to demonstrate . . . that misclassification was the rule rather than the exception." *Sav-On*, 34 Cal.4th at 330. Because Plaintiffs have no evidence that a class of ***all*** California branch managers can be certified, they have attempted to devise a "trial plan" allowing them to rewrite the "rule" by weeding out all the "exceptions." Their Rule 23 arguments are circular: If we exclude everyone who does not share certain features with Plaintiffs, then commonality, typicality, and predominance are met. No case has allowed a plaintiff to manufacture a class in this way.[42] Proposed trial plans are not an adequate evidentiary substitute for common

---

[42] Plaintiffs cite several cases that adopt a "two-phase" process. But Plaintiffs propose more phases. And not a single one of those cases adopt a "trial plan" allowing for classwide liability in an exemption misclassification case. In *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014), a case alleging that individuals worked off-the-clock, plaintiffs presented evidence of common practices discouraging the reporting of overtime, the key liability issue to be surveyed was whether people worked overtime, ***and*** the Court preserved the defendant's right to assert defenses for a later stage–unlike here where Plaintiffs ask the Court to determine liability ***including*** the exemption defense in the first phase. The liability determination in every other case also referred to a uniform issue. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492

23

1  proof. *Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 31 (2014) (citing *Sav-On*, 34

2  Cal.4th at 333; *Dailey v. Sears, Roebuck & Co*., 214 Cal.App.4th 974, 998 (2013)).

### 2. Plaintiffs provide no evidence that their "trial plan" is reliable.

Plaintiffs' "trial plan" is also unsupported by any expert testimony and is

hopelessly vague because it does not describe any statistical plan.[43] *See Duran*, 59

Cal. 4th at 13 (a statistical plan must be developed with expert input and afford the

right to impeach the model; the Court should consider whether this has been

developed at the certification stage). The plan also fails to:

- Explain how the issue of branch managers' duties can be surveyed in a way that reaches reliable results.

- Explain how a survey could be "statistical" after people self-identify as part of the class.

- Account for non-responses, which can unfairly skew the results of a survey. *Duran*, 59 Cal. 4th at 23.

- Address the possibility for varying responses–a possibility even Plaintiffs' counsel recognizes: "If you ask 1500 people generally, What's your primary duty, just that term alone, you're going to get 50 million different responses." (Ex. 2, Sep. 1, 2016 Hr'g Tr. 19:14-16.) To the extent that Plaintiffs' counsel rephrases the question to elicit more desirable responses, that renders the survey unreliable. *Gibson v. Cty. of Riverside*, 181 F. Supp. 2d 1057, 1068 (C.D. Cal. 2002) (survey drafted by counsel was unreliable).

The Court should reject the proposal for a trial plan without evidence of reliability.

### 3. Plaintiffs' "trial plan" violates U.S. Bank's due process rights by depriving it of the opportunity to cross-examine branch managers.

U.S. Bank has a due process right to fully cross-examine branch managers as to

all of the key issues of liability and to determine credibility. *See Jimenez*, 238 F.R.D.

___

(N.D. Cal. 2012) ("pattern and practice" in a gender discrimination lawsuit); *Bowerman v. Field Asset Servs., Inc.*, 2015 WL 1321883 (N.D. Cal. Mar. 24, 2015) ("right to control" in a case alleging independent contractors misclassification evidenced by the same or similar agreements); *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015) (uniform "exit inspection policy"). [43] Plaintiffs' reference to the 11-year-old trial plan submitted by Richard Drogin in *Sav-On* does not suffice because: (a) it does not track the plan suggested here; (b) Dr. Drogin's plan was not tested at trial because the case settled; and (c) a similar plan has since been rejected by multiple courts (see *Duran*, 59 Cal. 4th at 15-16 [trial court rejected Dr. Drogin's plan]; *Sinohui*, 2016 WL 3475321, *8 n.4 ["we decline to certify the [proposed] class based on little more than abstract statements about what statistical sampling might be able to establish] [internal quotations omitted].)

at 253; *Duran*, 59 Cal. 4th at 35; *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 586 (E.D. La. 2008). Because Plaintiffs propose determining liability via the use of a survey and then proceeding directly to assessing damages without any opportunity for cross-examination, it violates basic due process rights.

It is unclear if Plaintiffs propose to survey a ***portion*** of the class. If so, this also violates U.S. Bank's due process rights if it would automatically extend liability to all class members. *See Duran*, 59 Cal. 4th at 38-40. This is particularly true where there is already significant evidence that some branch managers may be properly classified. *See id.* at 35. Because U.S. Bank must be allowed to present evidence as to non-surveyed members (*id.* at 38), a survey would not avoid the need for mini-trials.[44]

**4.     Plaintiffs' proposed survey is unreliable because of self-interest bias.**

Plaintiffs' proposed survey would also be tainted by self-interest bias because branch managers have a vested interest in the results and have already been informed about the nature of the lawsuit. *Wallace v. Countrywide Home Loans, Inc.*, 2012 WL 11896333, *5 (C.D. Cal. Aug. 31, 2012); *Gibson*, 181 F.Supp.2d at 1068.[45]

## IV.  CONCLUSION

Plaintiffs have failed to meet their burden of proof under Rule 23, and the Court should deny their motion for class certification.[46]

Dated:  April 14, 2017                    WINSTON & STRAWN LLP

                                          By:  s/ Emilie C. Woodhead
                                               Attorney for Defendant
                                               E-mail: ewoodhead@winston.com

---

[44] *See also In re Wells Fargo II*, 268 F.R.D. at 612 ("[r]epresentative testimony is typically only allowed in the unpaid overtime context to establish the number of hours employees worked and the amount they were paid, not whether a class of employees was exempt from the overtime laws' coverage").

[45] U.S. Bank also objects to Plaintiffs' proposed "Phase 2: Damages," including the characterization of the burden of proof. Determining the scope of any damages trial and/or survey is premature, and U.S. Bank reserves all arguments.

[46] If a class is certified, then the Court should order that notice issue by a third party administrator, as it did in the order granting conditional certification. (Dkt. 39.) Additionally, Plaintiffs' request for social security numbers of potential class members should  be denied because they have no need for this highly sensitive, private information.

25